KING, Circuit Judge,
dissenting:
Because of the dubious circumstances of Celanese’s decision to deny separation pay to Appellants, I would prefer to dispose of this case by directing the district court to enter judgment in Appellants’ favor on their ERISA claim, brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due. In any event, the case should be remanded in the wake of Metropolitan Life Insurance Co. v. Glenn, — U.S. -, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), for the district court to properly weigh Celanese’s conflict of interest in the applicable abuse-of-discretion analysis. Thus, with all respect to my fine colleagues on the panel majority, I dissent.
I.
Two decades ago, the Supreme Court held in Firestone Tire & Rubber Co. v. Bruch that, “[consistent with established principles of trust law, ... a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). More recently, while this appeal was pending, the Court clarified in Glenn that the abuse-of-discretion standard applies even if the plan administrator operated under a conflict of interest, including the common situation where “the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket.” 128 S.Ct. at 2346. The court explained that, although the decision of a conflicted administrator is entitled to deference, the administrator’s “conflict should ‘be weighed as a factor in determining whether there is an abuse of discretion.’ ” Id. at 2350 (quoting Firestone, 489 U.S. at 115, 109 S.Ct. 948) (other internal quotation marks omitted).
Writing for the Glenn majority, Justice Breyer observed that “[tjrust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.” Glenn, 128 S.Ct. at 2350. He further explained that
when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together.
In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor’s inherent or case-specific importance. The conflict of interest ... should prove more important *331 (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.
Id. at 2351 (citations omitted); see also id. at 2352 (Roberts, C.J., concurring in part and concurring in the judgment) (“The majority would accord weight, of varying and indeterminate amount, to the existence of ... a conflict in every case where it is present.”).
In the wake of Glenn, we have recognized that “any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination.” Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir.2008) (reiterating the “familiar standard” that “a discretionary determination will be upheld if reasonable”). And, we have acknowledged the continued applicability of our pre-Glenn reasonableness test, comprised of eight nonexclusive factors that a court may consider (including the existence of a conflict):
“(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary’s interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary’s motives and any conflict of interest it may have.”
Champion, 550 F.3d at 359 (quoting Booth v. Walr-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.2000))*
II.
Here, the district court properly recognized that Celanese was accorded discretionary authority to make benefit eligibility determinations and, thus, that the rejection of Appellants’ claim for separation pay was to be reviewed for abuse of discretion. And, the court correctly acknowledged the applicability of our eight-factor reasonableness test in conducting such review. As Glenn now makes clear, however, the court’s analysis of the conflict of interest factor was fundamentally flawed.
A.
Significantly, the district court conducted a three-day bench trial in late July 2007 for the sole purpose of taking evidence on the conflict issue. The court specifically focused on the question of “whether or not there was undue influence on the Benefits Committee which would have impacted the *332 legitimacy of the committee’s interpretation of the [Separation Pay Plan].” J.A. 1001. The evidence adduced during the bench trial, as well as that submitted by the parties in support of their cross-motions for summary judgment, reflected the following.
• The Plan required participants to first submit written separation pay claims to the Plan’s Administrator, and to then appeal any adverse decision to the three-member Benefits Committee. See 29 U.S.C. § 1133(2) (mandating that ERISA plans “afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim”).
• Celanese officials repeatedly — but only privately — acknowledged in early 2005 that both the Vectran and PBI employees would be entitled to separation pay under the Plan if they were to receive inferior benefits from the purchasers of their respective business units (Kuraray and InterTeeh). There was particular concern about the larger separation pay obligation to the PBI employees (approximately $876,000) than to the Vectran employees (about $125,000), and the corresponding effect on the value of the InterTeeh deal.
• On April 1, 2005, Celanese executed a “side letter” with Kuraray — under which Celanese would provide separation pay to the Vectran employees, but the payment would appear to be part of a “signing bonus” funded by Kura-ray — apparently to conceal from the PBI employees the payment of Plan benefits to their Vectran counterparts.
• In mid-April 2005, Cheryl Cunningham, Celanese’s benefits manager, concluded that the InterTeeh benefits were indeed inferior and, thus, recommended that PBI employees receive separation pay — just as the Vectran employees (secretly) had.
• At the direction of Jay Townsend, the Celanese official negotiating the PBI-InterTech sale, a telephone conference call was conducted on April 22, 2005, with Townsend, in-house counsel Mathias Kuhr, benefits manager Cunningham, and human resources official B.J. Smith participating. Only Cunningham (as just one member of the three-member Benefits Committee) and Smith (the Plan’s Administrator) possessed any authority to decide the separation pay issue.
• During the conference call, Smith convinced Cunningham that the PBI employees were not entitled to separation pay under the Plan — not because of the plain terms of the Plan (which Smith had never read), but based on past practices in non-Plan-related divestitures. Soon after the call, Cunningham and the second member of the Benefits Committee informally agreed that the PBI employees were ineligible for Plan benefits; the third Committee member was never consulted about the matter. The PBI-Inter-Tech negotiations then proceeded with the understanding that any claim for Plan benefits made by the PBI employees would definitely be denied.
• Unaware that the decision to deny them Plan benefits had already been made, the Appellant PBI employees submitted written claims for separation pay in June 2005. Celanese thereafter conducted sham administrative proceedings — orchestrated by its lawyers — in order to give the appearance of a full and fair claims review. As just a few examples of Celanese’s egregious and dishonest conduct:
— Smith advised Appellants in a July 7, 2005 letter that they were *333 being permitted, “[i]n the interests of being fair,” ten days to submit additional evidence in support of their claims, J.A. 79, but the letter had actually been drafted by a Celanese lawyer as a means to “requir[e] the [PBI employees] to submit all of their evidence up front, most likely limiting any evidence in [any subsequent] lawsuit to the information submitted in the claims process,” id. at 239;
— Once Appellants submitted their additional evidence, counsel for Celanese explored various post hoc justifications (other than the plain language of the Plan) for the predetermined April 22, 2005 decision to deny Appellants’ claims for Plan benefits; and
— Correspondence from a Celanese attorney to Appellants, sent in the fall of 2005 to announce and defend the benefits denial decision, contained misinformation concerning, inter alia, the decision-making process utilized by Celanese, the Appellants’ procedural rights, and the nature of the so-called “signing bonus” paid to the Vectran employees.
• Significantly, the April 22, 2005 benefits denial decision not only contravened Plan procedures (requiring the Plan’s Administrator to make the initial claim determination and the Benefits Committee to resolve any appeal thereof), but also deprived Appellants of protections afforded by ERISA (mandating a full and fair review).
At the conclusion of the bench trial, the district court acknowledged that “without a doubt ... it was a sloppy and messy process by which the Benefits Committee reached” the benefits denial decision. J.A. 1005. Nevertheless, the court accepted as truthful the testimony of Cunningham— uncontradicted by direct evidence (though called into question by circumstantial evidence) — that the Committee had not been improperly influenced by Townsend or anyone else. As such, the court concluded that “the best we can say for plaintiffs is that this bench trial ends in a draw.” Id. at 1005-06. Because “plaintiffs [had] the burden of proof [and] the party with the burden of proof loses when it’s a draw,” the court further concluded that it was compelled to “find[ ] as a matter of fact there was no undue influence on the decision of the Benefits Committee that PBI employees were ineligible for separation pay under the plan.” Id. at 1006.
Thereafter, in disposing of the parties’ cross-motions for summary judgment by written Memorandum and Order of September 27, 2007, the district court engaged in our eight-factor reasonableness test. The court deemed the conflict of interest factor to be “inapplicable,” however, based on its determination at the conclusion of the bench trial “that the benefits committee, although conflicted, was not influenced by improper motives or authorities.” J.A. 1328. The court did acknowledge that “[t]he lack of formalities by which the benefits committee’s decisions were reached, and the indiscrete mixing of fiduciary and non-fiduciary roles, has not made this an easy case to decide.” Id. “However,” the court concluded, “Celanese has produced wholly benign motives and reasons for its decision, and Plaintiffs have failed to carry their burden of persuasion by showing that these explanations are implausible.” Id. Accordingly, the court ruled that “it was not an abuse of discretion to deny Plaintiffs’ claims for separation pay under the Plan.” Id. at 1329.
B.
Simply put, the district court’s handling of the conflict of interest factor — disre *334 garding Celanese’s acknowledged conflict on the ground that Appellants failed to demonstrate by a preponderance of the evidence that there was undue influence on the Benefits Committee — is wholly at odds with controlling Supreme Court precedent, culminating in Glenn. As Justice Breyer observed therein, trust law “requir[es] the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.” Glenn, 128 S.Ct. at 2350 (emphasis added). The reviewing judge is not permitted to disregard a conflict for lack of proof by a preponderance of the evidence that such conflict impacted the benefits decision; rather, the judge must simply consider the conflict as one of the factors to be weighed in assessing the decision’s overall reasonableness. See Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir.2009) (recognizing that, under Glenn, “a conflict of interest becomes just one of the ‘several different, often case-specific, factors’ to be weighed together in determining whether the administrator abused its discretion” (quoting Glenn, 128 S.Ct. at 2351)). Indeed, the purpose of having a judge — rather than a jury — assess the reasonableness of a benefits decision is that the judge is better-equipped to engage in a nuaneed weighing of relevant factors. See Beny v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 (4th Cir. 1985) (observing that, under trust law, “proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury”).
Finally, that the district court wrote off Celanese’s conflict of interest as “inapplicable” to the reasonableness inquiry is particularly problematic in view of the circumstances of the benefits denial decision. For example, Celanese failed to “take[] active steps to reduce potential bias and to promote accuracy ... by walling off claims administrators from those interested in firm finances,” such as would render the conflict “less important (perhaps to the vanishing point).” Glenn, 128 S.Ct. at 2351. Rather, Plan Administrator Smith and Benefits Committee member Cunningham made their benefits denial decision — a sudden reversal of a Plan interpretation widely shared by Celanese officials, including Cunningham — during a conference call arranged and participated in by PBI-In-terTeeh deal negotiator Townsend. Because these and other “circumstances suggest a higher likelihood that [Celanese’s conflict] affected the benefits decision,” id., the conflict should have been given significant weight in the abuse-of-discretion analysis — weight that, at a minimum, probably would have tipped the scale in Appellants’ favor. It is thus imperative that we at least remand this case for proper consideration of the conflict factor.
Accordingly, I dissent.

 Prior to Glenn, as we observed in Champion, we also accounted for conflicts of interest by applying “a 'modified' abuse-of-discretion standard that reduced deference to the administrator to the degree necessary to neutralize any untoward influence resulting from the conflict of interest.” Champion, 550 F.3d at 359. Of course, Glenn abrogated our modified abuse-of-discretion standard. See Glenn, 128 S.Ct. at 2351. Accordingly, I agree with the panel majority’s rejection of Appellants’ pre-Glenn contention that the district court should have applied the modified abuse-of-discretion standard.