PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY CARDEN,

        *Plaintiff-Appellant,*

v.

AETNA LIFE INSURANCE COMPANY,

        *Defendant-Appellee.*

No. 07-2165

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
R. Bryan Harwell, District Judge.
(6:05-cv-02053-RBH)

Argued: December 3, 2008

Decided: March 11, 2009

Before NIEMEYER and MICHAEL, Circuit Judges,
and Rebecca Beach SMITH, United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Michael and Judge Smith joined.

## COUNSEL

**ARGUED:** Robert Edward Hoskins, FOSTER LAW FIRM,
L.L.P., Greenville, South Carolina, for Appellant. Thomas
Edward Vanderbloemen, GALLIVAN, WHITE & BOYD,

P.A., Greenville, South Carolina, for Appellee. **ON BRIEF:** Jennifer E. Johnsen, Nicole J. Buntin, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

In paying Larry Carden monthly benefits under a long-term disability plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Aetna Life Insurance Company, the insurer and administrator of the plan, offset workers' compensation benefits that Carden received for an illness unrelated to his disability. Aetna relied on its reading of the plan's offset provisions and the plan language giving it discretion to interpret the plan.

The district court concluded that Aetna's determination was consistent with the language of the plan and that therefore its interpretation was not unreasonable. It accordingly concluded that "Aetna is entitled to offset Plaintiff's long-term disability benefits by the workers' compensation benefits which he received."

Challenging Aetna's reading of the plan, especially in light of Aetna's financial conflict of interest, Carden appealed. For the reasons that follow, we affirm.

I

Larry Carden, a power plant operator for Duke Energy Corporation since 1966, began experiencing symptoms of episodic vertigo (causing imbalance and dizziness) in 1982. In April 1997, he ceased working as a result of this condition and made a claim under Duke Energy's long-term disability plan. Aetna, which administered and paid benefits under the

plan, accepted Carden's application and began paying Carden monthly disability benefits.

Unbeknownst to Aetna, Carden made a workers' compensation claim against Duke Energy a few months later, in August 1997, alleging that he was suffering from asbestosis "as a direct and proximate result of his employment" with Duke Energy. Although Duke Energy contested the claim, asserting that Carden had not been "exposed to the hazards of asbestos," it ultimately entered into a settlement agreement with Carden in May 1999 for a lump sum payment of $53,248, of which $39,936 was allocated to Carden's "alleged permanent impairment" and $13,312 to attorneys fees. Duke Energy also agreed to pay future medical expenses relating to asbestosis.

When Aetna first learned of Carden's workers' compensation settlement in late 2004, it notified Carden by letter dated December 7, 2004, that the workers' compensation award was "other income" under the plan that needed to be offset against his disability benefits. Aetna set out a schedule, under which Carden would repay the $39,936 through a $665.60 reduction in his monthly disability checks for 60 months, and explained that it was making the adjustment "[s]ince you have received disability benefits in excess of your entitlement." When Carden appealed the decision, Aetna affirmed, explaining to Carden's attorney:

> Our interpretation of the plan is Worker's compensation benefits Mr. Carden received is [sic] considered as "other income" as described on page 9 in the coverage summary. Therefore, we feel it should be offset or reduce his monthly [long-term disability] payments.

Carden commenced this action under ERISA, 29 U.S.C. § 1132, challenging Aetna's interpretation of the plan, and the parties thereafter entered into a stipulation of the material

facts and the issue to be decided. They agreed that there are no facts in dispute and that "the basis for Mr. Carden's disability claim with [Aetna] [by reason of vertigo] and the physical basis for his Workers' Compensation claim [asbestosis] are different." They stipulated to the "administrative record" and to the plan documents and language. They agreed that Aetna is a fiduciary as defined by ERISA and that it had discretionary authority to interpret the plan under plan language that read, "Aetna shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy." They also agreed that because of Aetna's role in evaluating and paying claims, "the 'modified abuse of discretion standard' as interpreted and applied by the Fourth Circuit Court of Appeals and this Court is applicable for this matter."* Finally, they agreed that the case turned entirely on the proper interpretation of the plan language, articulating the issue as follows:

> The parties agree that the substantive issue to be resolved is whether [Aetna], under the specific language of the plan documents . . . is entitled to offset worker's compensation benefits recovered by Mr. Carden against the monthly disability benefits being paid by [Aetna] to Mr. Carden when the physical basis for the disability benefits being paid by [Aetna] [*i.e.*, vertigo] is different than the physical basis which gave rise to the worker's compensation award [*i.e.*, asbestosis].

The district court found that Aetna's interpretation of the plan was reasonable and was supported by substantial evidence, resulting from a deliberate, principled reasoning pro-

---

*After this stipulation was agreed to, the Fourth Circuit altered the standard of review in light of *Metropolitan Life Insurance Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343 (2008). *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008).

cess. Accordingly, it entered a judgment on November 5, 2007, declaring, "Aetna is entitled to offset Plaintiff's long-term disability benefits by the workers' compensation benefits which he received based on his asbestosis." From that judgment, Carden appeals.

II

The plan in this case provides long-term disability benefits to employees, and, because Carden suffers from vertigo, he has been receiving disability benefits since 1997. There is no dispute about whether the benefits are payable and their amount. Rather, the issue here is whether Aetna, functioning under a conflict of interest, acted reasonably in construing the plan's language to provide for an offset against those benefits in the amount that Carden received in 1999 as a lump-sum payment for his permanent impairment caused by asbestosis.

Carden contends that the plan, in addressing "Lump Sum Payments From Workers' Compensation," provides that such a lump-sum payment may be set off against disability benefits only when the lump-sum payment is for the *same* "disability" for which long-term disability benefits are paid. While Carden claims that the plan provisions are unambiguous in this regard, he argues that if the plan language is ambiguous, it must be interpreted "in favor of [him] and against the insurer" because of Aetna's conflict of interest, citing to a line of cases represented by *Carolina Care Plan, Inc. v. McKenzie*, 467 F.3d 383 (4th Cir. 2006). In *Carolina Care Plan*, we said, "When an ERISA plan vests discretion *in an administrator who also insures the plan*, reasonable exercise of that discretion requires that the administrator construe plan ambiguities against the party who drafted the plan." 467 F.3d at 389 (emphasis added).

Since we decided *Carolina Care Plan* and the other cases on which it relies, the Supreme Court decided *Metropolitan Life Insurance Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343

(2008), altering several aspects of judicial review of ERISA plan determinations. *See Champion*, 550 F.3d at 357-59. In *Glenn*, the Court held that judicial review of an ERISA plan administrator's decision is "under a *de novo* standard unless the plan provides to the contrary." *Glenn*, 128 S. Ct. at 2348 (citations and internal quotation marks omitted). But when the plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard. *Id.*; *Champion*, 550 F.3d at 358.

Of especial importance here, the *Glenn* Court also held that the administrator's conflict of interest did not change the standard of review from the deferential review, normally applied in the review of discretionary decisions, to a *de novo* review, or some other hybrid standard. *Glenn*, 128 S. Ct. at 2350; *Champion*, 550 F.3d at 358. Indeed, the Court stated more broadly that the conflict of interest should not lead to "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Glenn*, 128 S. Ct. at 2351. Rather, a conflict of interest becomes just one of the "several different, often case-specific, factors" to be weighed together in determining whether the administrator abused its discretion. *Id.*

The *Glenn* Court found a conflict when the plan administrator serves in the dual role of evaluating claims for benefits and paying the claims. *Glenn*, 128 S. Ct. at 2346, 2348-50. Specifically, it held that an insurance company, which served as both administrator with discretionary authority to determine claims and insurer with responsibility of paying the claims, functioned under a conflict of interest. *Id.* at 2349-50.

Inasmuch as Aetna serves both as administrator of the plan with discretionary authority to determine entitlement to benefits and to construe disputed terms and as insurer of the plan with responsibility for paying benefits, it has a conflict of interest, as defined by *Glenn*.

Carden maintains that because of this conflict of interest the plan language must be interpreted in his favor, thus barring Aetna from offsetting his asbestosis settlement against his long-term disability benefits for vertigo. Carden would have us reach this conclusion despite the plan's language stating that "Aetna shall have discretionary authority to . . . construe any disputed or doubtful terms of this policy."

Before *Glenn*, we had indeed developed a rule whereby ambiguities in ERISA plans were construed against the drafter whenever a conflict of interest existed. *See Carolina Care Plan*, 467 F.3d at 389; *Bynum v. Cigna Healthcare of N.C., Inc.*, 287 F.3d 305, 313-14 (4th Cir. 2002); *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 58 (4th Cir. 1995); *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 88-89 (4th Cir. 1993). In those cases, we applied this "*contra proferentem*" rule even when the plan language gave discretion to the plan administrator to interpret disputed or doubtful terms.

But *Glenn* now forecloses our application of that rule to curb the discretion given an administrator by a plan, ruling that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." 128 S. Ct. at 2351. Indeed, the Court rejected the very idea of applying hard and fast rules for the review of ERISA determinations, calling them "formulas that will falsif[y] the actual process of judging" and "instrument[s] of futile casuistry." *Id.* at 2352 (alterations in original) (citation and internal quotation marks omitted). Rather, under the *Glenn* review structure, we must consider the administrator's conflict of interest as only "one factor among many" in determining the reasonableness of the administrator's decision exercising discretionary authority. *Id.* at 2351.

As the result of *Glenn*, whenever a plan administrator employs its interpretive discretion to construe an ambiguous provision in favor of its financial interest, that fact may be

considered as a factor weighing against the reasonableness of its decision. Conversely, when the administrator exercises its interpretive discretion to construe an ambiguous provision against its financial interest, that fact may be considered as a factor weighing in favor of the reasonableness of the decision. But this factor—in either case—is only considered with all of the other factors that may be brought to bear in determining whether the administrator abused his discretion. *See Glenn*, 128 S. Ct. at 2351. The weight accorded to this factor will, of course, depend largely on the plan's language and on consideration of other relevant factors. In *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), we identified eight nonexclusive factors that guide our ERISA abuse-of-discretion review:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43 (footnote omitted).

The adjustment to our ERISA jurisprudence in light of *Glenn* is necessitated also by *Glenn*'s reemphasis on resolving ERISA questions such as these under principles of trust law, analogizing the plan administrator to a trustee. *See Glenn*, 128 S. Ct. at 2347. The Court thus reaffirmed its holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989), that courts are to apply trust-law principles to ERISA determi-

nations. Among the principles of trust law reiterated by *Firestone* are those that "[a] trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." 489 U.S. at 111 (citing G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 559, at 169-171 (2d rev. ed. 1980)).

We now turn to our review of Aetna's interpretation of the plan, beginning with consideration of the plan's language. The key sections of the plan are three unnumbered sections, labeled by plain-language descriptions as follows: (1) "Other Income Benefits—This section outlines income benefits which you may receive from other sources while disabled and which will be considered as an offset to payments you receive under this plan"; (2) "Other Income Benefits Which Do Not Reduce Benefits"; and (3) "How Aetna Determines Other Income Benefits." Thus, sections (1) and (2) (our numbering) list the income from other sources that will and will not reduce Carden's long-term disability benefits. Aetna applied section (1) to Carden, which provides in part that offsets will be made for the following sources of "other income benefits":

> Disability, retirement, or unemployment benefits required or provided for under any law of a government. Examples are:
>
>> Unemployment compensation benefits.
>>
>> Temporary or permanent, partial or total *disability benefits under any state* or federal workers' *compensation law* or any like law, which are *meant to compensate the worker for any one or more of the following*: loss of past or future wages; impaired earning capacity; lessened ability to compete in the open labor market; *any degree of permanent impairment*; and *any degree of loss of bodily function or capacity*.

> Statutory disability benefits.
>
> Benefits under the Federal Social Security Act, the Railroad Retirement Act, the Canada Pension Plan, and the Quebec Pension Plan.
>
> Veterans' benefits.

(Emphasis added). Because Carden received workers' compensation benefits in the amount of $39,936 as "compensation for Employee-Plaintiff's alleged *permanent impairment*," (emphasis added), Aetna applied this income as an offset. Aetna relied on the specific language in section (1) that provides offsets of income from "permanent . . . disability benefits under any state . . . workers' compensation law . . . which are meant to compensate the worker for any one or more of the following: . . . *any degree of permanent impairment*; and *any degree of loss of bodily function or capacity*." (Emphasis added).

Aetna then applied section (3), which explains how to offset a disability benefit that is paid in a "lump sum payment." Section (3) provides in relevant part:

> **Lump Sum Payments From Workers' Compensation**:
>
> That part of the lump sum payment *that is for disability* will be counted, even if it is not specifically apportioned or identified as such. This will be done if it is or is not the result of a compromise, settlement, award or judgment. . . . This amount will be broken down to a period of time equal to the lesser of: (a) the remaining benefit duration; and (b) 60 months.

(Emphasis added).

Carden argues that the "for disability" language in section (3) refers to the same disability for which he is receiving disability benefits because that is the only relevant disability. Because he is receiving disability benefits *for vertigo*, he contends, the lump sum payment *for asbestosis* is not "for [his] disability." Therefore, the term "disability" used in these sections of the plan refers to his vertigo disability. The plan language, he argues, does not authorize Aetna to offset the lump sum workers' compensation settlement he received for asbestosis. He argues further that because asbestosis does not necessarily disable its victims, the "for disability" language in section (3) cannot be referring to his asbestosis settlement.

While Carden attempts to demonstrate why the plan does not provide for offsets with respect to disability benefits involving two different medical conditions, the plan likewise does not provide that disability from one medical condition cannot be set off against the disability benefits provided by another condition. It is silent on the matter. But taking into account the comprehensive list of other sources of income included in section (1), it is reasonable to conclude that Aetna has the authority to include offsets from any disabilities related to any permanent impairment or any loss of bodily function or capacity.

This conclusion appears to be consistent with the plan's design, which is to assure an *income* stream for the disabled employee during the period of disability rather than an independent benefit quantified by a specific disability. This is demonstrated by plan provisions requiring most sources of collateral income paid to the employee during disability be applied to reduce the disability benefit so long as the overall income stream remains constant. Thus, the plan provides that the administrator may require proof from the employee "of income you receive from any occupation for compensation or profit," and it specifically offsets income from pensions, other retirement benefits, and unemployment benefits.

Carden finally directs us to the definition of "disability" under North Carolina's workers' compensation law, which governed his asbestosis settlement. But this effort to apply a meaning different from that given in the plan will not succeed in overruling the plan's language. *See Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 419-20 (4th Cir. 2004) (declining to adopt Social Security disability definitions in connection with ERISA determinations); *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999) (same).

Considering the *Booth* factors, we conclude that Aetna's interpretation of the plan was a reasonable one, if not the best one, and was consistent with the purposes stated in the plan. The plan makes clear that its purpose is to ensure sufficient support, with a specified level of "continuing income" from a variety of income sources, for employees who are "unable to work due to illness or injury." The settlement Carden received from Duke Energy for asbestosis provided him with $39,936, net of attorneys fees and future medical expenses related to asbestos, so that the full amount of $39,936 could be included as part of the specified level of continuing income for his support.

In sum, *Booth* factors (1) (language of the plan), (2) (purposes and goals of the plan), and (4) (consistency with other terms in the plan) strongly evidence the reasonableness of Aetna's interpretation. While we also consider *Booth* factor (8) (Aetna's conflict of interest), when we consider all of the relevant factors and weigh them together, as required by *Glenn*, 128 S. Ct. at 2351, we conclude that Aetna did not abuse its discretion.

Accordingly, the judgment of the district court is

*AFFIRMED*.