**Steve O. ROBINSON, Plaintiff,**

v.

**AIG LIFE INSURANCE COMPANY, Defendant.**

Action No. 4:09–cv–105.

United States District Court, E.D. Virginia, Norfolk Division.

March 26, 2010.

Stephen Lynn Grobel, Stephen L. Grobel, Ltd., Hampton, VA, for Plaintiff.

Robert Barnes Delano, Jr., Sands Anderson Marks & Miller PC, Richmond, VA, for Defendant.

### OPINION & ORDER

TOMMY E. MILLER, United States Magistrate Judge.

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. All parties consented to trial before a Magistrate Judge, and an order of reference was filed October 8, 2009. [Doc. No. 17].

On March 17, 2010, the Court heard oral argument on the parties' cross Motions for Summary Judgment [Docs. No. 24, 26]. Stephen Grobel, Esq., represented the Plaintiff, and Robert Delano, Jr., Esq., represented the Defendant. The Official Court Reporter was Jody Stewart. For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On October 9, 2006, Plaintiff, Steve O. Robinson ("Robinson"), suffered an automobile accident which severely injured his right leg. At that time, Robinson's wife, Nicole, was a full-time employee of HSBC North America Holdings, Inc., and was a participant in the company's Accidental Death and Dismemberment Insurance Plan ("Plan"). When the accident occurred Robinson qualified as an eligible spouse under the Plan. As a result of the injury, Robinson filed an insurance claim with the plan provider, Defendant AIG Insurance ("AIG"), on November 14, 2006. AIG denied the claim in a letter to Robinson dated May 17, 2007, and he appealed. Finally, by letter dated May 2, 2008, AIG affirmed its denial of coverage to Robinson.

On June 25, 2009, Robinson filed a complaint in the Circuit Court for the City of Hampton, alleging he had been unlawfully denied insurance benefits for the injury to his right leg which led to uniplegia. AIG noted the removal of the case to this Court on August 18, 2009, and filed its Motion to Dismiss, [Doc. No. 5], on the same day. On September 15, 2009, the undersigned recommended granting AIG's Motion to Dismiss Count One, with leave to amend, and granting Motion to Dismiss Count Two with prejudice. [Doc. No. 16]. Subsequently, Robinson filed an Amended Complaint, [Doc. No. 14], on September 29, 2009. With consent by both parties, and upon Order entered October 8, 2009, this case was referred to the undersigned to conduct any and all further proceedings. [Doc. No. 17]. On December 7, 2009, both parties filed Cross–Motions for Summary Judgment. The motions are fully briefed,

and the matter is now ripe for adjudication.

## II. *STANDARD OF REVIEW*

*Cross–Motions for Summary Judgment:* Upon a motion for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c)(2). Simply because both parties move for summary judgment does not require that summary judgment should be granted one or the other. *Lew-Ron Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003) (*citing Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996)). The language of Rule 56(c) mandates the entry of summary judgment, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In these cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (*citing* FED.R.CIV.P. 56(c)). Thus, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

*Denial of ERISA Benefits:* Substantively, the standard of judicial review for the denial of insurance plan benefits in cases governed by ERISA is "a de novo standard unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008). A plan provides to the contrary when its language grants the administrator discretionary authority in granting or denying benefits. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 259–60 (4th Cir. 2009). In such a case, "[judicial] review is conducted under the familiar abuse-of-discretion standard." *Id.* Still, when an insurer has the discretion to deny plan benefits this creates a conflict of interest. On the one hand, the fiduciary must be a steward of the plan's assets, and on the other it must pay meritorious claims arising under the plan's terms. Even when this conflict of interest exists, however, the standard of review is not reversed from "the deferential review, normally applied in the review of discretionary decisions, to a de novo review, or some other hybrid standard." *Id.* Instead, the conflict of interest is one of several factors to be considered in determining whether the administrator abused its discretion. *Id.*

■ In *Booth v. Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan*, a factually similar case to this, the Fourth Circuit stated, "[b]ecause the standard of judicial review is dispositive in this case, we turn first to the proper standard for judicial review of a plan administrator's decision to grant or deny benefits under an employee welfare benefit plan regulated by ERISA." 201 F.3d 335, 340 (4th Cir.2000). In this case, both parties agree that AIG's Administrative Committee ("AC") had a grant of discretionary authority to approve or deny benefit claims. [Def's. Br. in Supp. of Summ. J. at 2–3]; [Pl's. Br. in Supp. of

Summ. J. at 8]; *see also* [R. 307] [1]. Accordingly, the proper standard of review is an abuse of discretion standard with the committee's conflict to be taken into consideration. The issue for this Court to resolve is thus, whether AIG, and the AC in particular, abused its discretion in concluding that Robinson was not entitled to benefits for uniplegia.

### III. *ANALYSIS*

### Part (A): Statement of Parties Positions & Law

In short, Robinson moves for summary judgment arguing that the evidence regarding his medical condition, revealed in the electromyogram ("EMG"), and considered in combination with Dr. Cavazos' written medical opinions, should have been reviewed by AIG's reviewing physician, Dr. Greenwood, and considered by the AC before denying his claim for benefits. In failing to consider this information, Robinson argues, the AC's decision was "not supported by substantial evidence and was not reached by a deliberate, principled reasoning process." [Pl's. Br. in Supp. of Summ. J. at 9].

On the other hand, AIG claims, first, that the EMG contradicts Robinson's argument because, while it indicates he has no nerve functioning below his right knee, it also shows that he does have nerve functioning above the knee. [R. 917]. This split diagnosis reveals the plaintiff's futility in arguing that his right leg is completely paralyzed (let alone *completely* and *irreversibly* paralyzed) as the Plan requires. Additionally, AIG submits, Robinson cannot produce a medical expert to opine that his condition meets the demand-

ing requirements for uniplegia as defined by the Plan. [2] As such, the AC did not abuse its discretion in denying Robinson benefits because he was not diagnosed with uniplegia, therefore its decision was reasonable. [Br. in Opp. to Pl.'s Br. for Summ. J. at 6].

Robinson also raises the issue whether AIG denied his claim because it alleged his leg injury did not result from an accident as defined in the Plan. [Pl's. Br. in Supp. of Summ. J. at 13]. This position stemmed from AIG's reference, in its denial letter to Robinson on May 2, 2008, to reports indicating Robinson suffered a seizure that led to the auto accident. [R. 248]. Although both parties spend considerable time in their pleadings addressing this issue, at oral argument, AIG conceded that the denial of benefits was based solely on its decision regarding Robinson's uniplegia claim.

To help in analyzing whether a fiduciary's exercise of discretion is reasonable, a list of eight non-exclusive factors has been employed. The Fourth Circuit has applied the following factors, as well as others: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may

---

1. Page citations are to the administrative record previously filed by the parties.

2. Importantly, the Plan defines uniplegia as "the complete and irreversible paralysis of one limb." [R. 215]. And, "limb means entire arm or entire leg." [R. 215].

have. *Booth,* 201 F.3d 335, 342–43 (4th Cir.2000); *see Champion v. Black & Decker (U.S.) Inc.,* 550 F.3d 353, 359 (4th Cir. 2008).

Of the factors set out above, Robinson takes aim at factors three and five, regarding the adequacy of the information used by the AC to make the benefits decision, and the rationale of the decision-making process. [Pl's. Br. in Supp. of Summ. J. at 9]. For instance, Robinson states, "it is not clear from the Administrative Record whether the Committee considered the [EMG] report before deciding to deny plaintiff's appeal," and "there is no reference to the EMG findings in the May 2, 2008 appeal denial letter." [Pl.'s. Rebut. Br. to Def.'s Br. in Opp. to Summ. J. at 3, 6]. He also adds that "Dr. Greenwood was never provided a copy of the EMG report." If all the evidence was not considered, including the findings in the EMG report- in light of Dr. Cavazos' letters, Robinson argues that the AC abused its discretion.

This argument requires two predicates. First, the underlying additional medical evidence must prove the complete and irreversible loss of an entire limb, per the Plan terms. *See* note 1. This is a predicate argument because without such a finding, the AC decision would be a correct and, therefore, reasonable decision. Second, the AC must not have considered the EMG report or Dr. Cavazos' letters. This is a predicate argument because it would be less likely that there was an abuse of discretion if the report and letters were considered by the AC.

To support the first predicate argument, Robinson contends that "[t]he [EMG] study suggest[ed] the findings of multiple mononeuropathies in the right leg versus a distal sciatic neuropathy," meaning, there were no working nerves in the entire lower right leg. [Pl.'s. Rebut. Br. to Def.'s Br. in Opp. to Summ. J. at 3–4 (citing R. 917) ].

Robinson also argues that Dr. Cavazos provides the "best medical evidence" with regard to Robinson's condition. [Pl's. Br. in Supp. of Summ. J. at 9]. Substantively, this evidence includes: Dr. Cavazos' opinion in his letter on November 30, 2007, indicating that Robinson had "permanent paralysis of his right lower extremity status post peroneal nerve injury," [R. 111]; Dr. Cavazos' March 31, 2008 letter, in which he wrote that Robinson had a "pseudo paralysis," [R. 170]; and finally, Dr. Cavazos' May 13, 2008 letter in which he noted "[o]verall, the net effect would be functional uniplegia of the right lower extremity." [R. 257]. Moreover, Robinson contends that the "EMG study supports Dr. Cavazos' detailed opinion in his … letter that even though some nerves in Mr. Robinson's right leg are operational, the cumulative functional effect is that the leg is paralyzed." [Pl's. Br. in Supp. of Summ. J. at 11]. Thus, as Robinson sees it, the uninformed decision ignoring or disregarding the EMG, plus the incorrect finding that Robinson's condition is not uniplegia resulted in an AC abuse of discretion.

To support the second predicate argument, Robinson avers that the four pages of the EMG report sent from Hampton Roads Neurology were never forwarded by Karen Linton to the members of the AC in mid April 2008. [Pl.'s. Rebut. Br. to Def.'s Br. in Opp. to Summ. J. at 3]. Correspondingly, there was no reference to the EMG findings in the May 2, 2008 appeal denial letter. [Pl.'s. Rebut. Br. to Def.'s Br. in Opp. to Summ. J. at 3]. Additionally, of the three letters Dr. Cavazos submitted to the AC, the last, which was highly informative, was sent after the appeal denial letter of May 2, 2008. [R. 258]. As a result, the AC either ignored, or was without, crucial medical evidence in the decision-making process, thus constituting an abuse of discretion.

Conversely, AIG defends by asserting the first factor in the *Booth* framework, the plan language. [*See* R. 248]. AIG points out, frankly, that the AC's decision was proper and reasonable because Robinson fails to suffer from the Plan definition of uniplegia. This is so because, as the counsel for AIG reiterated at oral argument, even Robinson does not have a health care provider willing to go "the whole nine yards" to opine that he is *completely* and *irreversibly* paralyzed in his *entire* leg as required by the Plan. [R. 215] (emphasis added). As such, Robinson cannot meet the very demanding standard set by the Plan to qualify for uniplegia, and therefore, it was not an abuse of discretion for the AC to deny benefits.

For the following reasons, this Court agrees with AIG, and finds that the underlying additional medical evidence does not substantively support a claim that Robinson is uniplegic. Therefore, AIG did not make an unreasonable decision in deny Robinson benefits, and thus did not abuse its discretion.

### Part (B): Findings

Undermining Robinson's argument, that it was an abuse of discretion for the AC to deny him benefits, is the fundamental and inescapable fact that he cannot prove his condition qualifies as uniplegia under the language of the Plan. While his condition is tragic and unfortunate, as AIG rightly notes, the purported evidence upon which Robinson relies to suggest an error on the part of the AC is not convincing. Absent compelling, if not conclusive, evidence that

Robinson's condition qualifies as uniplegia, it would be improper for this Court to substitute its judgment for that of the AC. *See Booth v. Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan,* 201 F.3d 335, 341 (4th Cir.2000) ("Thus, a trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion."). In short, of the factors set out in *Booth* to determine the reasonableness of the AC's decision, conformity with the Plan language, asserted by AIG, trumps the alleged malfeasance of the AC asserted by Robinson.

Therefore, to start, the definition of uniplegia is paramount in this case. Quite concisely, the Plan defines uniplegia as "the complete and irreversible paralysis of one limb." [R. 215]. Further, "limb means entire arm or entire leg." [R. 215]. Of the two combined sentences, the key words that apply to this case are: complete and entire.[3]

First, Robinson references the EMG report signed by Dr. H. Blair Marsteller, M.D. in support of his claim that the AC improperly ignored, or disregarded, medical evidence. While it is true that the report states that "[a]ctive denervation[4] is seen in most muscles examined below the knee", it goes on to add that "[m]uscles above the knee are relatively normal-they have units activated and there is not active denervation." [R. 917]. This report indicates that while Robinson's lower right leg is neurologically paralyzed, a result of "multiple mononeuropathies",[5] [Pl.'s. Re-

---

**3.** Robinson also challenges the legal sufficiency of the term "irreversible," arguing that many medical conditions once thought irreversible are now commonly treatable or cured. Given that the permanency of Robinson's injury is not raised to deflect liability on the part of the AIG, the Court will defer ruling on the matter, accepting that Robinson's injury, confined as it may be, is irreversible.

**4.** Denervation is defined as "a resection of or removal of the nerves to an organ or part." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (W.B. Saunders Company, 26th ed. 1985).

**5.** Mononeuropathy is defined as "a disease affecting a single nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (W.B. Saunders Company, 26th ed. 1985).

but. Br. to Def.'s Br. in Opp. to Summ. J. at 3], his *entire* right leg is not. Per the terms of the Plan, absent paralysis of the *entire* limb, Robison's injury does not qualify. Taking the EMG, alone, and at face value, it is implausible to objectively argue that the EMG report qualifies Robinson's condition as satisfying uniplegia. Under the Plan, uniplegia requires the paralysis of the entire limb, and the report indicates paralysis only below the knee. Clearly, the AC's decision denying benefits was reasonable, as far as the EMG is concerned, because the EMG did not indicate paralysis of the *entire* limb. As such, the Court cannot find the AC abused its discretion with regard to the EMG report. *See Booth*, 201 F.3d 335, 341 (4th Cir. 2000).

Second, Robinson cites Dr. Cavazos' letters of November 30, 2007, March 31, 2008, and May 13, 2008, in support of his argument that the underlying additional medical evidence proves uniplegia. In each, Dr. Cavazos' attempts to further clarify and elucidate his opinion with respect to Robinson's condition. While he increasingly emphasizes the severity of Robinson's condition, he, nevertheless, falls short of stating that Robinson's entire leg was completely and irreversibly paralyzed.[6] The entire substance of the first letter to AIG states, "[p]lease be advised that Mr. Steve Robinson does have a permanent paralysis of his right lower extremity status post peroneal nerve injury." [R. 111]. Even with this brief assessment, the opinion fails to meet the Plan defini-

tion of uniplegia as it addresses only the post peroneal[7] nerve. In the March 31st letter, Dr. Cavazos goes on to explain how Robinson has "pseudo paralysis"[8] which results in "a complete loss of function" due to the peroneal nerve injury. [R. 170]. Besides suffering the same peroneal nerve qualification, Dr. Cavazos also states "even though he is not *completely* paralyzed in his right lower extremity, the extremity functions as if it were." [R. 170] (emphasis added). Again, the letter begets Robinson's inadequacy in matching the medical assessment with the Plan terms when it specifically address the issue of "complete paralysis." In Dr. Cavazos' last letter, he remarks that Robinson's knee is dysfunctional and that has the net effect of producing uniplegia. [R. 257]. Still, Dr. Cavazos also notes in that letter that Robinson can ambulate, and that "the muscles in the upper portion of his right lower extremity have active motor units . . . ." [R. 257]. Dr. Cavazos clearly tried to accommodate Robinson as best he could, yet he never quite opined that Robinson suffered a complete and irreversible paralysis of an entire limb. Primarily due to the fact that Robinson's injury did not produce paralysis in the upper portion of his right leg, but also due to the equivocation as to "complete paralysis," Robinson failed to obtain a diagnosis from Dr. Cavazos legally sufficient to meet the Plan definition of uniplegia. Accordingly, it would be improper for this court to conclude that the AC acted unreasonably in finding that

---

6. At oral argument Robinson rebuffed criticism by AIG, in its pleadings, that Dr. Cavazos' diagnoses did not use the term "uniplegia." The Court is not fixated on the term and analyzes Dr. Cavazos' letters to AIG in the context of the definition of uniplegia as defined in the Plan.

7. "Pertaining to the fibula or to the outer side of the leg; fibular." DORLAND'S ILLUSTRATED

MEDICAL DICTIONARY (W.B. Saunders Company, 26th ed. 1985).

8. "Apparent loss of muscular power, without true paralysis, marked by defective coordination of movements or by the repression of movement on account of pain." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (W.B. Saunders Company, 26th ed. 1985).

Robinson's condition did not qualify as uniplegia under the Plan, even if the Court were to rely on Dr. Cavazos' opinions. *See Booth,* 201 F.3d 335, 341 (4th Cir. 2000).

Next, Robinson suggests that the combination of the EMG, read in conjunction with Dr. Cavazos' third letter of May 13th, reveals that his condition qualifies as uniplegia. Robinson argues that Dr. Cavazos' assessment of "functional uniplegia" should have been considered by the AC. For starters, the letter was received after the AC made its decision on May 2, 2008,[9] but assuming, *arguendo*, it had been received earlier, it fails to reconcile the opinion of Dr. Cavazos with the terms of the Plan. The Plan recognizes uniplegia as the complete and irreversible paralysis of an entire limb. In the May 13th letter Dr. Cavazos, (a) indicates the nerve damage is confined to the lower limb, and (b) the muscles in the upper part of Robinson's leg have active motor units. [R. 257]. It appears clear to the Court, upon a conventional review of the terms "complete" and "entire", that Dr. Cavazos' diagnoses, creative as they may be, do not satisfy the Plan terms. If the nerve damage is confined to the lower limb, how can the paralysis be complete? And, if the muscles in the upper part of the leg have active motor units, how can the paralysis be of the entire limb? Furthermore, in order to qualify for benefits under the Plan, a claimant must suffer paralysis and uniplegia, not "pseudo paralysis" or "functional uniplegia." In such a situation, where the evidence is debatable, at best, and far from conclusory, it is not appropriate for this Court to disrupt the decision of the AC based on the discretion granted to it in the

Plan. *See Booth,* 201 F.3d 335, 341 (4th Cir.2000).

Further evidence undermines Robinson's claim that he suffers uniplegia. In fact, Robinson is a victim of his own success. From December 2006 through March of 2008 there are numerous instances of Robinson ambulating with little or no assistance. For example, in early February 2007, Robinson was able to ambulate up to 60 feet with standby assistance and without contact ground assistance. [R. 493–94]. Indeed, on February 19, 2007, Robinson was able to ambulate for 90 feet, albeit with a walker, and comment that "things are going well." [R. 498]. Over a year later, Robinson's success continued as on February, 26, 2007, he was able to ambulate up a flight of stairs in a standing position. [R. 501]. A few weeks later he noted, on March 6, 2007, "I'm doing walking in my house. And the steps are easier today." [R. 504]. And more than a year after that, his physical therapy notes indicate that he was ambulatory, with an antalgic gait and crutches. [R. 921]. With this added evidence of Robinson's physical achievements, it is even more difficult for this Court to find the AC's decision unreasonable, and thus an abuse of discretion, in denying the claim.

For these foregoing reasons this Court finds that the underlying additional medical evidence fails to support Robinson's claim that he suffers uniplegia as defined by the language of the Plan. Having made such a finding, the Court concludes that it was not unreasonable, nor an abuse of discretion on the part of the AC to deny Robinson Plan benefits. Relying specifically on the *Booth* factor regarding plan

---

**9.** As the case law directs, "[w]hen a district court reviews a plan administrator's decision under the abuse of discretion standard, 'an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.' " *Elliott v. Sara Lee Corp.,* 190 F.3d 601 (4th Cir.1999) (*citing, Sheppard & Enoch Pratt Hospital v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir.1994)).

language to evaluate the reasonableness of AIG's discretionary decision, the Court finds the AC's decision was manifestly within its discretion. Furthermore, it is unnecessary to address whether it would have been an abuse of discretion for the AC to fail to review the report and letters, because the Court finds the underlying substance of the report and letters does not advance Robinson's argument past the plan language defense asserted by AIG.

**Part (C): Cross–Motions for Summary Judgment**

Since this case is brought on cross motions for summary judgment, the Court must determine, in light of its finding above, if either party is entitled to prevail as a matter of law. FED.R.CIV.P. 56(c)(2). Clearly, having failed to prove that the underlying additional medical evidence supports the substance of his argument in favor of an award of benefits, Robinson is not entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is particularly so for the plaintiff who carries the burden. *Id.* As for AIG, the analysis is a bit more complex. In considering AIG's motion for summary judgment, "the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to [Robinson]." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (*citing Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996)). Of course, this standard means giving Robinson the benefit of the doubt in any factual matter of contention between the parties, perhaps even on the issue of the uniplegia diagnosis.

However, there is an important distinction to be made with the AC's decision regarding uniplegia noted above. That is, AIG prevails on that issue because it is a legal question and not a factual one. Even complying with Federal Rule 56, and resolving all factual matters in favor of Robinson, still does not yield a different result as far as summary judgment is concerned. After all, the factual status of Robinson's leg is not in dispute, both parties agree that there is little, if any, sensory and muscular activity in parts of his leg. Rather, whether that status qualifies as uniplegia is at the heart of the matter, and that is a legal question. To analogize the situation, this case is not about two parties disputing over the color of the traffic light at the time of the accident, instead this is about the legal significance of a red light. Since the disputed issue in this case, the AC's decision to deny benefits, was a reasonable *legal* decision applying the facts to the terms of the contractual plan, there are no genuine issues as to a material fact outstanding. As such, the Court may properly grant relief by ordering summary judgment.

To recall, the moving party is entitled to a judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an element of his case in which he has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, since Robinson cannot show that AIG abused its discretion in denying him Plan benefits, he has failed to make a sufficient showing entitling him to relief under ERISA.

## IV. ORDER

For the foregoing reasons, the Court ORDERS that AIG's Motion for Summary Judgment [Doc. No. 24] be GRANTED and Robinson's Motion for Summary Judgment [Doc. No. 26] be DENIED.