FLOYD, Circuit Judge,
dissenting:
I respectfully dissent.
We have long held that, in the ERISA context, “the plain language of an ERISA plan must be enforced in accordance with ‘its literal and natural meaning.’ ” United McGill Corp. v. Stinnett, 154 F.3d 168, 172 (4th Cir.1998) (quoting Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir.1997)). “[W]e enforc[e] the plan’s plain language in its ordinary sense.” Bynum v. Cigna Healthcare of N.C., Inc., 287 F.3d 305, 313 (4th Cir.2002) (second alteration in original) (quoting Wheeler v. Dynamic Eng’g, Inc., 62 F.3d 634, 638 (4th Cir.1995)) (internal quotation marks omitted), abrogated on other grounds by Carden v. Aetna Life Ins. Co., 559 F.3d 256 (4th Cir.2009).
“An administrator’s discretion never includes the authority ‘to read out unambiguous provisions’ contained in an ERISA plan, and to do so constitutes an abuse of discretion.” Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 639 (4th Cir.2007) (quoting Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir.2005)). “[E]ven as an ERISA plan confers discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written.” Colucci, 431 F.3d at 176. Nevertheless, Principal Life ignores the plain, literal, natural, ordinary, and unambiguous meaning of the language of the short term disability (STD) and long term disability (LTD) policies. Instead, it refers to language from the Internal Revenue Code to determine what the policies’ language actually means. Because this interpretation is unreasonable, we ought not affirm its decision.
I.
As noted by the majority, as a result of beginning a new medical practice in 2002, Fortier incurred large start-up and litigation expenses for which he claimed federal income tax deductions on his 2003 and 2004 tax returns. He became disabled in 2005. The parties concur that Fortier is *241 disabled, but disagree on how the policies provide to calculate his disability benefits.
The determination of the amount to which Fortier is entitled depends on his predisability earnings for 2003 and 2004. The following section of the LTD policy contains the contested language:
Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:
a. the Member’s share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by the Member and others under the Member’s supervision or direction; less
b. the Member’s share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began.
The STD policy is identical to the LTD policy, except that the STD policy refers to “Weekly Earnings,” as opposed to “Monthly Earnings.”
Both parties agree that, to calculate Fortier’s predisability earnings, Principal Life must deduct Fortier’s “usual and customary unreimbursed business expenses” from his gross pre-disability income. The gravamen of the dispute, however, lies in the parties’ interpretations of subsection (b).
Fortier contends that the policies set forth five distinct and discrete tests that an item must meet before it can be deducted from his gross predisability income as a “usual and customary ... business expense[ ].” According to Fortier, for a “usual and customary ... business expense[ ]” to be deducted from his gross disability income, the expense must (1) be “unreimbursed,” (2) be “incurred on a regular basis,” (3) be “essential to the established business operation of the Policyholder,” (4) be “deductible for Federal Income Tax purposes,” and (5) “not exceed the expenses before Disability began.” Fortier avows that the start-up and litigation expenses that he deducted on his 2003 and 2004 tax returns were neither “incurred on a regular basis” nor “essential to [his] established business operation” when those unambiguous phrases are ascribed their plain, literal, natural, and ordinary meaning. As such, according to Fortier, those expenses ought not be deducted from his gross predisability income.
To the contrary, Principal Life argues that the language of the Internal Revenue Code controls the definition of what constitutes a “usual and customary ... business expense! ].” Section 162(a) of the Internal Revenue Code “allow[s] as a [tax] deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.” I.R.C. § 162(a). Principal Life maintains that the policies’ stated requirements that the “usual and customary ... business expenses” must be “unreimbursed,” “incurred on a regular basis,” and “essential to the established business operation of the Policyholder” are all simply another way of stating that the expenses must be “deductible for Federal Income Tax purposes.” Principal Life contends that the fifth factor — “not exceed the expenses before Disability began” — is inapplicable in regards to what expenses are deductible. *242 After much reflection, I am unable to agree that Principal Life’s interpretation is reasonable.
To accept Principal Life’s position, I would be required to think that under the plain, literal, natural, ordinary, and unambiguous meaning of the language of subsection (b), to determine Fortier’s predisability earnings, Principal Life must take Fortier’s predisability income and deduct whatever expenses were deductible for Federal Income Tax purposes, as long as those expenses do not exceed Fortier’s expenses before his disability began. I would further be required to think that the plain, literal, natural, ordinary, and unambiguous meaning of the language of subsection (b) does not require that I interpret the term “and” in a conjunctive nature and, thus, to think that the expenses are not required to meet each and every one of the other requirements of being (1) “unreimbursed,” (2) “incurred on a regular basis,” and (3) “essential to the established business operation of the Policyholder,” although that is exactly what the policies plainly and literally state.
I cannot agree with Principal Life’s contention that, in effect, the Internal Revenue Code ought to be incorporated into the policies byi reference. First, I am unpersuaded that the two references to “Federal Income Tax purposes” somehow reasonably yield such a result. The policies could not be clearer that, to determine Fortier’s predisability earnings, Principal Life was required to take Fortier’s gross income, as reported for Federal Income Tax purposes, and subtract from that amount “the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began.” The first reference to “Federal Income Tax purposes” plainly indicates that Principal was to look to Fortier’s tax returns to determine his gross predisability income. The second reference to “Federal Income Tax purposes” just as plainly states that Principal was also to look to Fortier’s tax returns to determine if, in addition to the other requirements, his business expenses were “deductible for Federal Income Tax purposes.” I am of the opinion that no other interpretation of subsection (b) is reasonable when the unambiguous language of the policies is given its plain, literal, natural, and ordinary meaning.
Second, I cannot concur that, although the policies use the term “essential” as one of the tests an expense must meet to be properly deducted from Fortier’s gross predisability income, given the plain meaning of the language of subsection (b), For-tier ought to have known that what the policies plainly meant was that the expense must be “necessary.” Nor can I concur that, because “essential” means “necessary,” and because “necessary” is a term employed by the Internal Revenue Code in reference to expenses deductible for “Federal Income Tax purposes,” Fortier should have known that the policies meant that anything deducted on his tax returns would be deducted from his gross predisability income, and would ultimately reduce his disability benefits.
Third, I am unconvinced that, although the policies use the term “incurred on a regular basis” as one of the tests that an expense must meet to be deducted properly from Fortier’s gross predisability income, given the plain meaning of the language of subsection (b), Fortier ought to have known that term could be interpreted to restate a requirement of I.R.C. § 162(a), inasmuch as one of the meanings of the term “regular” is “ordinary.” Nor *243 am I convinced that, because “regular” means “ordinary” and “ordinary” is a term employed by the Internal Revenue Code in reference to expenses deductible for “Federal Income Tax purposes,” Fortier should have known that what the policies plainly meant was that anything he deducted on his tax returns would be deducted from his gross predisability income, and would, thus, ultimately reduce his disability benefits.
Fourth, I will not consent to the contention that, although the policies use the term “usual and customary” to describe expenses that can be properly deducted from Fortier’s gross predisability income, given the plain meaning of the language of subsection (b), Fortier ought to have known that what the policies plainly meant was that the expenses must be “ordinary and necessary.” Nor can I concur that, because “usual and customary” means “ordinary and necessary,” and because “ordinary and necessary” is a term employed by the Internal Revenue Code in reference to expenses deductible for “Federal Income Tax purposes,” Fortier should have known that what the policies plainly meant was that anything he deducted on his tax returns would be deducted from his gross predisability income, and would, thus, ultimately reduce his disability benefits.
Fifth, I disagree that Principal Life’s decision to incorporate the Internal Revenue Code into the language of the policies, and in doing so, to deduct Fortier’s large start-up and litigation expenses in calculating his disability benefits, is in keeping with the goal of subsection (b) of the policies. The purpose of calculating the predisability earnings is to make an accurate determination of those earnings so that the claimant can be fairly compensated for his disability. Deducting Fortier’s large start-up and litigation expenses, however, skews his earnings markedly.
Consequently, I think that Principal Life abused its discretion in failing to interpret the unambiguous language of subsection (b) in its plain, literal, natural, and ordinary sense. Furthermore, its interpretation contravenes the clear purpose of subsection (b).
II.
The weakest of Principal Life’s assertions is that Fortier “wants it both ways” by claiming large business expenses to reduce his federal income tax liability while, at the same time, minimizing his business expenses in an attempt to maximize his disability benefits. It is axiomatic that the goal of subsection (b) of these ERISA policies and the Internal Revenue Code are entirely different. To somehow surmise that the goals of Congress in drafting the Internal Revenue Code and the goals of Principal Life in drafting subsection (b) are in any manner similar strains the bounds of credulity.
As I noted above, the goal of subsection (b) of the policies is to make an accurate determination of the claimant’s regular predisability income. But the goal of the Internal Revenue Code is to raise revenue as well as to encourage various policy goals. Hence, it is perfectly proper for Fortier to “want[ ] it both ways” given the differences between the purpose of the disability policies and those of the Internal Revenue Code.
III.
Finally, in interpreting the fifth factor of subsection (b) — that the expenses deducted from Fortier’s predisability earnings must “not exceed the expenses before Disability began” — I cannot agree with Fortier that this provision means that the “[ajverage monthly expenses for the two calendar years before [the] disability be *244 gan cannot exceed those incurred during the month before the disability began.” Instead, I am persuaded by the reasoning of the district court that Fortier’s interpretation is inconsistent with the policies’ requirement that Principal Life must calculate Fortier’s earnings by reference to the average earnings for the last two calendar years. Consequently, I would hold that Principal Life’s interpretation of this provision as a limitation on post-disability expenses is reasonable.
IV.
In sum, Principal Life’s interpretation of subsection (b) does not reflect the plain language of the policies. And, because its interpretation does not reflect the plain language of the policies, it is not reasonable. And, because it is not reasonable, it is an abuse of discretion. Therefore, we ought not put our imprimatur on it. Accordingly, I must respectfully dissent.