**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KENNETH FORTIER,

          *Plaintiff-Appellant,*

v.

PRINCIPAL LIFE INSURANCE
COMPANY,

          *Defendant-Appellee.*

No. 10-1441

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:08-cv-00005-D)

Argued: September 20, 2011

Decided: January 11, 2012

Before WILKINSON, NIEMEYER, and FLOYD,
Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the
majority opinion, in which Judge Wilkinson joined. Judge
Floyd wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Andrew O. Whiteman, HARTZELL & WHITE-
MAN, LLP, Raleigh, North Carolina, for Appellant. Stirman

Russell Headrick, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jennifer P. Keller, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Johnson City, Tennessee, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

After Dr. Kenneth Fortier became medically disabled, he closed his practice, Fortier Obstetrics & Gynecology, PLLC, and applied for disability benefits from Principal Life Insurance Company, which had issued short-term and long-term group disability policies to the practice. The policies provide that an insured who is disabled is entitled to receive 60% of his predisability earnings, capped at $1,500 per week for short-term benefits and $6,000 per month for long-term benefits. Those benefits, however, are reduced by the amount that all disability benefits (from both individual and group policies) exceed his predisability earnings. Principal Life determined that Fortier was disabled, as defined in the policies, but that, in view of the fact that he was receiving $15,470 per month in disability benefits on his individual disability policies issued by another company, he was not entitled to any further benefits under Principal Life's group disability policies.

Dr. Fortier commenced this action under ERISA, claiming that the administrator of the Principal Life policies had misconstrued the policies in calculating his predisability earnings at $9,916 and that, with a proper calculation, his predisability earnings were far greater, entitling him to the maximum benefits from Principal Life, despite the fact that he was receiving $15,470 on his individual disability policies. More particularly, he contends that Principal Life, when calculating his

predisability earnings, erroneously deducted from his gross predisability earnings extraordinary and one-time business expenses incurred by him in 2003-04 in starting up his practice and in pursuing litigation with partners in his former medical practice. Without the reductions resulting from these extraordinary, one-time business expenses, Fortier's predisability earnings were sufficiently large to entitle him to the maximum disability benefits from the group policies.

The district court, ruling on cross-motions for summary judgment, entered judgment in favor of Principal Life, concluding that the administrator's interpretation was a reasonable one. The administrator, who was given "complete discretion" to interpret the policies, had concluded that because Fortier claimed his extraordinary expenses as deductions on his federal income tax returns, he thereby represented that they were "ordinary and necessary" business expenses. Thus, those same expenses were also, in the language of the policies, "usual and customary," "incurred on a regular basis," and "essential to the established business operation." The district court held that the administrator, in adopting this interpretation, did not abuse her discretion.

We affirm. Even though we recognize that the policy language, defining those expenses that may be subtracted from gross income to arrive at predisability earnings, is somewhat confusing and, to be sure, needlessly verbose, we conclude that the administrator's interpretation was a reasonable one.

I

Dr. Fortier formed a medical practice in 1994, which, by 2002, had grown to include four physicians and a nurse. As a result of a dispute with his co-owners, however, he left that practice and formed a new one, beginning it on October 1, 2002. In doing so, Fortier incurred substantial start-up expenses, as well as attorneys fees in prosecuting litigation with his former partners.

On his federal income tax return for 2003, Dr. Fortier reported gross income in the amount of $975,511 and business expenses in the amount of $910,168 (which included his start-up and litigation expenses), resulting in net income of $65,343. For 2004, he reported gross income of $997,647 and business expenses of $825,006 (again including start-up and litigation expenses), resulting in net income of $172,641.

In early 2005, Fortier became medically disabled, and on February 1, 2005, he closed his practice. He applied for short-term and long-term disability benefits from Principal Life under the group policies issued to his practice, which covered him and his employees. He also applied for disability benefits under two individual disability policies issued to him by Unum Life Insurance Company. Principal Life immediately began to provide Fortier with short-term disability benefits. Two months later, however, when Fortier began receiving $15,470 in benefits from Unum, Principal Life ceased making any more payments under its group policies because Fortier's predisability income was not sufficiently large to exceed the limits stated in the policies.

Dr. Fortier pursued administrative review as provided by the group policies, claiming that Principal Life had improperly calculated his predisability income because the administrator reduced his gross income by the "unusual and non-customary reorganizational business expenses." If these "extraordinary" expenses were taken out of the calculus, Fortier's income would have been, as he claimed, $48,913 per month. With this level of predisability income, he would have been entitled to the maximum benefits under the Principal Life policies of $1,500 per week for short-term benefits and $6,000 per month for long-term benefits, even while receiving $15,470 in benefits from Unum.

In a letter dated May 17, 2006, Principal Life denied Fortier's claim for benefits, explaining:

The calculation of Dr. Fortier's Predisability Earnings was based on the income and expenses included in his 2003 and 2004 Income Tax Returns. According to the Internal Revenue Service, to be deductible, a business expense must be both ordinary and necessary. An ordinary expense is one that is common and accepted in trade or business. A necessary expense is one that is helpful and appropriate for trade or business. An expense does not have to be indispensible to be considered necessary.

Based on the description above, by including the expenses noted on Dr. Fortier's 2003 and 2004 Federal Income Tax Returns as deductible business expenses, he is representing that these expenses are both ordinary and necessary. We consider the expenses as usual and customary business expenses for the purpose of the determination of Pre-Disability Earnings for Long-Term Disability benefits offered under the group policy.

In your letter of January 6, 2006, you dispute Principal Life Insurance Company's application of the meaning of "ordinary and necessary" as per the Internal Revenue Service's definitions. Additionally, you requested [P]rincipal Life Insurance Company evaluate Dr. Fortier's expenses without regard to whether or not they were deductible for tax purposes. Principal Life Insurance Company disagrees with your position. The policy text describing Weekly [and Monthly] Earnings[ ] is clear and refers to the deductibility for Federal Income Tax purposes. There is clear nexus in the policy between the policy definitions and Internal Revenue Service terminology. Moreover, the Internal Revenue Service definition of "ordinary and necessary" encompasses "usual, customary, and regular."

Fortier commenced this action under ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming short-term benefits of $1,500 per week and long-term benefits of $6,000 per month. He alleged that in calculating his predisability income for the purpose of determining benefits, Principal Life "failed to conduct a reasoned and principled review of [his] claim for disability benefits."

On cross-motions for summary judgment, the district court entered judgment on March 30, 2010, in favor of Principal Life. The court applied the factors relevant to judicial review of an administrator's exercise of discretion, as set forth in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), "weigh[ed] them together," and concluded that Principal Life did not abuse its discretion. From the district court's judgment, Fortier filed this appeal.

II

On appeal, Dr. Fortier contends that the administrator abused her discretion in construing the group policies' definition of "Predisability Earnings" to mean that Principal Life should simply use the amount of net income from his federal tax returns for the two years prior to his disability and thereby ignore other language included in the definition. This approach, he argues, allowed the administrator to deduct unusual and non-customary reorganization expenses and litigation expenses from his predisability gross earnings, resulting in the denial of benefits. Although Fortier was able to reduce his taxable income significantly by deducting on his 2003 and 2004 tax returns extraordinary, one-time expenses for the start-up of his medical practice and litigation expenses, he argues that those expenses should not, in calculating his predisability income, have been deducted as "business expenses" as that term is used in the group disability policies. He maintains that the unambiguous language of Principal Life's policies includes specific criteria for the deduction of

business expenses, which include not only the criterion that an expense be deductible for federal income tax purposes but also other explicitly stated criteria that the administrator did not take into account.

Had the administrator considered all relevant criteria, Fortier claims, she could not have concluded that his extraordinary, one-time start-up expenses and litigation expenses were, as required by the policies, "incurred on a *regular* basis" and "essential to the *established* business operation" of his medical practice. He argues that expenses "incurred on a regular basis" means that they must be incurred "frequently and repetitively" and that expenses "essential to an established business" exclude expenses for a start-up business. Thus, he concludes, not all tax deductible expenses must be included in the calculation of the policy-defined business expenses, as the administrator determined.

The parties agree that the administrator of the Principal Life disability policies is given discretion to construe the policies and to determine eligibility for benefits. The policies provide:

> [Principal Life] has complete discretion to construe or interpret the provisions of this group insurance policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. The decisions of [Principal Life] in such matters shall be controlling, binding, and final as between [Principal Life] and persons covered by this Group Policy . . . .

Thus, a court reviewing the administrator's decision must review only for abuse of discretion and therefore "must not disturb the . . . decision if it is reasonable, even if the court itself would have reached a different conclusion." *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996).

Judicial review for abuse of discretion is guided by consideration of the eight nonexhaustive *Booth* factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342–43.

In reviewing the administrator's decision in this case, the district court concluded that *Booth* factors (1) (the language of the plan); (2) (the purposes and goals of the plan); (3) (the adequacy of the materials considered to make the decision and the degree to which they support it); and (4) (whether the fiduciary's interpretation was consistent with other provisions in the plan) "strongly evidence[d] the reasonableness of [the administrator's] interpretation." The court found further that *Booth* factor (8) (conflict of interest) did "not render [the administrator's] decision unreasonable."[1]

---

[1] The parties agree that because Principal Life served in the dual role of both evaluating claims and paying claims, it operated under a conflict of interest. But neither party pointed to any evidence of how the conflict of interest affected the interpretation made by the administrator in this case. Moreover, neither party undertook the analysis that the Supreme Court required in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 108 (2008), inquiring whether the conflict was significant given "the circumstances of the particular case." Absent any evidence in the record that Principal Life's denial of benefits was a product of its financial interest, rather than its genuine and reasoned judgment, we can hardly place determinative weight on that factor in reviewing the administrator's decision.

We review the district court's decision de novo, employing the same standard that governed the district court's review of the plan administrator's decision. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 360 (4th Cir. 2008).

## III

The parties' dispute centers on the group policies' definition of "Predisability Earnings." The administrator applied the policies' definition to conclude that Fortier's predisability earnings were $9,916 per month, which was insufficient to entitle him to benefits in light of the $15,470 per month he was receiving from Unum.[2] Fortier, applying the same definition, argues that his predisability earnings were $48,913, which, the parties acknowledge, would afford him maximum benefits under Principal Life's group disability policies.

Principal Life's group disability policies provide for a disability benefit, not exceeding $1,500 per week on the short-term policy and $6,000 per month on the long-term policy, based on 60% of the member's "Predisability Earnings." "Predisability Earnings" are those earnings "in effect prior to the

---

[2]The administrator's calculation began with gross income and business expenses that Fortier reported on his 2003 and 2004 tax returns, which, when averaged, came to $9,916 per month. She took 60% of that number to arrive at the monthly benefit of $5,949.60. Then, applying the limitation relevant to when the insured receives "payments attributable to individual disability policies," such as the $15,470 Fortier was receiving from Unum, she concluded Fortier was entitled to no benefits. The limitation provides that "[i]n no event will the sum of amounts payable" for (1) group benefits under the Principal Life policies ($5,949.60) and (2) "payments attributable to individual disability insurance policies" ($15,470) "exceed 100% of Predisability Earnings" ($9,916). "In the event the Member's total income from all sources listed above exceeds 100% of Predisability Earnings, the benefits under this Group Policy will be reduced by the amount in excess of 100% of Predisability Earnings." Since Fortier's income from all sources ($21,419.60) would exceed his predisability earnings ($9,916) by $11,503.60, the benefits under the Principal Life policies are reduced by that amount, leaving him entitled to zero benefits.

date Disability begins." The policies define those earnings for purposes of the issues here as follows:

> Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:

>> a.  the Member's share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by the Member and others under the Member's supervision or direction; less

>> b.  the Member's share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began.

This language, for purposes of our discussion, provides essentially that Fortier's predisability monthly earnings are determined by subtracting from his gross earnings as reported for federal income tax purposes his business expenses as defined in subsection (b) of the policies' definition of predisability earnings. The business expenses are there defined in part as (1) "the usual and customary unreimbursed business expenses," (2) "which are incurred on a regular basis," (3) "are essential to the established operation of the Policyholder," and (4) "are deductible for Federal Income Tax purposes." The additional criterion that the expense not "exceed

the expenses before Disability began" is inapplicable to this discussion, as we explain in Part IV, below.

In calculating Fortier's predisability earnings, the administrator used predisability business expenses that Fortier deducted on his federal income tax returns for the tax years 2003 and 2004. She concluded that all the attributes described in the policies' definition of predisability business expenses, even though stated distinctly, are in substance no more than relevant restatements of the attributes that make the expenses deductible for tax purposes. Therefore, she used the business expenses claimed by Fortier on his tax returns in her calculations. The attributes given in the policy to predisability business expenses—that they be "usual and customary," "incurred on a regular basis," and "essential to the established business operation"—merely expressed, as the administrator concluded, "attributes of expenses that have traditionally been considered in determining deductibility under [I.R.C. § 162(a)]." Section 162(a) allows taxpayers to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The administrator thus noted that there is a "clear nexus" between the "ordinary and necessary" language contained in I.R.C. § 162(a) and the various phrases contained in subsection (b) of the policies' definition of monthly earnings.

Fortier argues reasonably that because business expenses for purposes of the policies' calculations must meet both the criterion of being deductible under the Internal Revenue Code and the other criteria stated separately in subsection (b), the other separately stated criteria must be further limitations, distinguishing expenses deductible for tax purposes from business expenses defined in the policies for determining monthly earnings.

It is not clear why the policies chose to add the first three criteria—"usual and customary," "incurred on a regular basis," and "essential to the established business operation"

—when the phrase "deductible for Federal Income Tax purposes" could arguably be the only one needed to accomplish the policies' purposes under the administrator's interpretation. The overall policy language, however, taken in context, would seem to permit the administrator reasonably to conclude that the policies' definition of business expenses should be read in light of I.R.C. § 162(a). This conclusion is indicated by two significant references in the policies' language to the Internal Revenue Code.

First, "Monthly Earnings" as used in the policies must be based on data reported by Fortier on his federal income tax returns. This overarching requirement in the policies would seem to be vital to any disability plan interested in using accurate data because a taxpayer's incentives are to reduce his income by deducting all legitimate business expenses from gross income. Thus, by defining predisability expenses in terms of tax reported data, the policies can expect greater accuracy when determining predisability income. This prefatory restriction in the definition of "Predisability Earnings" accordingly supports the administrator's conclusion that there is a "clear nexus" between the criteria for reporting income and expenses on tax returns and the criteria for defining income and expenses under the group policies.

The second reference to federal income tax criteria in the policies is provided in subsection (b), which includes, as part of the definition of business expenses, those expenses that are "deductible for Federal Income Tax purposes." Neither party has conducted an analysis of the Internal Revenue Code to determine whether there are deductible business expenses that would not meet the other criteria set forth in subsection (b) of the policies. Principal Life nonetheless contends that the other criteria in subsection (b) are merely reiterations of the relevant criteria for federal tax deductibility, providing example restrictions or clarifications of what was intended in the policies.

This is not an irrational position. For example, the Internal Revenue Code provides that to be deductible, a business expense must be "ordinary and necessary." The Supreme Court has construed "ordinary" to be synonymous with "normal, usual, or customary"—terms that the disability policies also use. *See Deputy v. du Pont*, 308 U.S. 488, 495 (1940); *see also Danville Plywood Corp. v. United States*, 899 F.2d 3, 6-7 (Fed. Cir. 1990).

In the same vein, the administrator could conclude that the word "essential," as contained in the policies, is a synonym of the tax term "necessary." *See Merriam-Webster's Collegiate Dictionary* 427 (11th ed. 2007) (defining "essential" in relevant part, as "of the utmost importance: basic, indispensible, necessary"); *Noland v. Comm'r*, 269 F.2d 108, 111 (4th Cir. 1959) ("[T]hat expense which is essential to the continuance of [an individual's] employment is deductible").

While Fortier does not take real issue with the comparison of "necessary" and "essential," he does note that the policy requires that an expense be essential to "the *established* business operation of the Policyholder." Because the expenses incurred by him in 2003 and 2004 were in large part *start-up* expenses for his new medical practice, he argues that the term "established" restricts the expenses that may be used in determining predisability earnings. While this argument is not at all unreasonable, it was nonetheless also reasonable for the administrator to have concluded that the entire phrase reiterates the requirement of I.R.C. § 162(a) that business expenses be "necessary . . . in carrying on any trade or business" and that the word "established" merely functions to underscore that "not every income-producing and profit-making endeavor constitutes a trade or business. . . . [T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity." *Comm'r v. Groetzinger*, 480 U.S. 23, 35 (1987).

Finally, the policies' requirement that expenses be "incurred on a regular basis" can be construed to restate the

requirements of I.R.C. § 162(a) inasmuch as the term "regular," even though having several possible meanings, does include the meaning "ordinary." While the phrase "on a regular basis" might, at first blush, be thought to mean "at regular intervals and repeatedly," as Fortier claims, it can also mean "regularly incurred," which more readily could be taken to mean "ordinarily incurred." *See Garner's Dictionary of Legal Usage* 104 (3d ed. 2011) (noting that "updated on a regular basis" is grammatically identical to "regularly updated"); *see also The Random House Dictionary of the English Language* 1624 (2d ed. 1987) (defining "regular" and "regularly" to include both "at regular times or intervals" or simply "usually" or "ordinarily"). It is significant to observe that were Fortier's interpretation of "on a regular basis" to be adopted by the administrator, it could become virtually impossible to distinguish includable and excludable expenses. For instance, if Fortier were to use a light bulb in his business that had a ten-year life, would the expense for that light bulb be "incurred on a regular basis" as he uses the term, i.e. "repeatedly"? Or if Fortier purchased a permanent piece of equipment that he was amortizing over the period of, say, seven years, would the one-time purchase be excludable as not "incurred on a regular basis," even though he claimed a deduction for a portion of the equipment's cost each year?

Even though the administrator's interpretation probably renders much of subsection (b)'s definition of business expenses repetitive and superfluous, it is nonetheless, if not the best, at least a reasonable solution to an interpretive dilemma. For example, it is unavoidable to conclude that the phrase "usual and customary" does not have a distinct meaning from I.R.C. § 162(a)'s "ordinary and necessary," or that "essential" does not have a distinct meaning from "necessary." And if that is true, then the other phrases, while not tied as closely to the Internal Revenue Code, would have to be subjected to some test to determine whether they are to be given independent meaning while "usual and customary" and "essential" would not be given an independent meaning. With the

various phrases thus being subject to amorphous tests to resolve their multiple meanings, we cannot conclude that Principal Life's take on the policy was an unreasonable one.

Because the policy entrusts Principal Life with "complete discretion" to resolve ambiguities and to determine benefits, we will respect its reasonable interpretation of the language when calculating Fortier's predisability earnings.

IV

Dr. Fortier contends additionally that Principal Life's interpretation is erroneous based on the last clause in subsection (b) of the policies' definition of business expenses, which provides that business expenses deducted from predisability income must "not exceed the expenses before Disability began."

This argument, however, provides Fortier with no assistance because it is readily apparent that both the meaning and context of the clause make it inapplicable to the circumstances of this case. First, it makes no sense to ask whether *predisability* expenses "exceed the expenses *before Disability* began." Such a statement is meaningless and contributes nothing to the discussion. Read in context, it is apparent that the clause is a part of the definition of "Monthly Earnings" used for other purposes in the policies. The "Monthly Earnings" definition is textually applied to define both "Current Earnings" and "Predisability Earnings." But "Current Earnings" are relevant only to the determination of benefits for a member who is "working during a period of Disability," which is not Fortier's circumstance. In such a case the member's monthly earnings are determined by looking at his gross revenue and deducting those expenses that satisfy the other criteria of business expenses as well as the criterion that those expenses, *while the member is working*, "do not exceed the expenses before Disability began." Thus, the limitation imposed by the last clause of subsection (b) obviously applies

only when determining "Current Earnings," an issue not relevant to the case before us.

* * *

Because we conclude that Principal Life's denial of Dr. Fortier's claims for short-term and long-term disability benefits was based on a reasonable reading of Principal Life's disability policies, we affirm the judgment of the district court.

*AFFIRMED*

FLOYD, Circuit Judge, dissenting:

I respectfully dissent.

We have long held that, in the ERISA context, "the plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998) (quoting *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)). "[W]e enforc[e] the plan's plain language in its ordinary sense." *Bynum v. Cigna Healthcare of N.C., Inc.*, 287 F.3d 305, 313 (4th Cir. 2002) (second alteration in original) (quoting *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) (internal quotation marks omitted), *abrogated on other grounds by Carden v. Aetna Life Ins. Co.*, 559 F.3d 256 (4th Cir. 2009).

"An administrator's discretion never includes the authority 'to read out unambiguous provisions' contained in an ERISA plan, and to do so constitutes an abuse of discretion." *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007) (quoting *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005). "[E]ven as an ERISA plan confers discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written."

*Colucci*, 431 F.3d at 176. Nevertheless, Principal Life ignores the plain, literal, natural, ordinary, and unambiguous meaning of the language of the short term disability (STD) and long term disability (LTD) policies. Instead, it refers to language from the Internal Revenue Code to determine what the policies' language actually means. Because this interpretation is unreasonable, we ought not affirm its decision.

I.

As noted by the majority, as a result of beginning a new medical practice in 2002, Fortier incurred large start-up and litigation expenses for which he claimed federal income tax deductions on his 2003 and 2004 tax returns. He became disabled in 2005. The parties concur that Fortier is disabled, but disagree on how the policies provide to calculate his disability benefits.

The determination of the amount to which Fortier is entitled depends on his predisability earnings for 2003 and 2004. The following section of the LTD policy contains the contested language:

> Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:
>
> a. the Member's share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by the Member and others under the Member's supervision or direction; less
>
> b. the Member's share (based on ownership or contractual agreement) of the

> usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began.

The STD policy is identical to the LTD policy, except that the STD policy refers to "Weekly Earnings," as opposed to "Monthly Earnings."

Both parties agree that, to calculate Fortier's predisability earnings, Principal Life must deduct Fortier's "usual and customary unreimbursed business expenses" from his gross predisability income. The gravamen of the dispute, however, lies in the parties' interpretations of subsection (b).

Fortier contends that the policies set forth five distinct and discrete tests that an item must meet before it can be deducted from his gross predisability income as a "usual and customary . . . business expense[ ]." According to Fortier, for a "usual and customary . . . business expense[ ]" to be deducted from his gross disability income, the expense must (1) be "unreimbursed," (2) be "incurred on a regular basis," (3) be "essential to the established business operation of the Policyholder," (4) be "deductible for Federal Income Tax purposes," and (5) "not exceed the expenses before Disability began." Fortier avows that the start-up and litigation expenses that he deducted on his 2003 and 2004 tax returns were neither "incurred on a regular basis" nor "essential to [his] established business operation" when those unambiguous phrases are ascribed their plain, literal, natural, and ordinary meaning. As such, according to Fortier, those expenses ought not be deducted from his gross predisability income.

To the contrary, Principal Life argues that the language of the Internal Revenue Code controls the definition of what

constitutes a "usual and customary . . . business expense[ ]." Section 162(a) of the Internal Revenue Code "allow[s] as a [tax] deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." I.R.C. § 162(a). Principal Life maintains that the policies' stated requirements that the "usual and customary . . . business expenses" must be "unreimbursed," "incurred on a regular basis," and "essential to the established business operation of the Policyholder" are all simply another way of stating that the expenses must be "deductible for Federal Income Tax purposes." Principal Life contends that the fifth factor—"not exceed the expenses before Disability began"—is inapplicable in regards to what expenses are deductible. After much reflection, I am unable to agree that Principal Life's interpretation is reasonable.

To accept Principal Life's position, I would be required to think that under the plain, literal, natural, ordinary, and unambiguous meaning of the language of subsection (b), to determine Fortier's predisability earnings, Principal Life must take Fortier's predisability income and deduct whatever expenses were deductible for Federal Income Tax purposes, as long as those expenses do not exceed Fortier's expenses before his disability began. I would further be required to think that the plain, literal, natural, ordinary, and unambiguous meaning of the language of subsection (b) does not require that I interpret the term "and" in a conjunctive nature and, thus, to think that the expenses are not required to meet each and every one of the other requirements of being (1) "unreimbursed," (2) "incurred on a regular basis," and (3) "essential to the established business operation of the Policyholder," although that is exactly what the policies plainly and literally state.

I cannot agree with Principal Life's contention that, in effect, the Internal Revenue Code ought to be incorporated into the policies by reference. First, I am unpersuaded that the two references to "Federal Income Tax purposes" somehow reasonably yield such a result. The policies could not be

clearer that, to determine Fortier's predisability earnings, Principal Life was required to take Fortier's gross income, as reported for Federal Income Tax purposes, and subtract from that amount "the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began." The first reference to "Federal Income Tax purposes" plainly indicates that Principal was to look to Fortier's tax returns to determine his gross predisability income. The second reference to "Federal Income Tax purposes" just as plainly states that Principal was also to look to Fortier's tax returns to determine if, in addition to the other requirements, his business expenses were "deductible for Federal Income Tax purposes." I am of the opinion that no other interpretation of subsection (b) is reasonable when the unambiguous language of the policies is given its plain, literal, natural, and ordinary meaning.

Second, I cannot concur that, although the policies use the term "essential" as one of the tests an expense must meet to be properly deducted from Fortier's gross predisability income, given the plain meaning of the language of subsection (b), Fortier ought to have known that what the policies plainly meant was that the expense must be "necessary." Nor can I concur that, because "essential" means "necessary," and because "necessary" is a term employed by the Internal Revenue Code in reference to expenses deductible for "Federal Income Tax purposes," Fortier should have known that the policies meant that anything deducted on his tax returns would be deducted from his gross predisability income, and would ultimately reduce his disability benefits.

Third, I am unconvinced that, although the policies use the term "incurred on a regular basis" as one of the tests that an expense must meet to be deducted properly from Fortier's gross predisability income, given the plain meaning of the

language of subsection (b), Fortier ought to have known that term could be interpreted to restate a requirement of I.R.C. § 162(a), inasmuch as one of the meanings of the term "regular" is "ordinary." Nor am I convinced that, because "regular" means "ordinary" and "ordinary" is a term employed by the Internal Revenue Code in reference to expenses deductible for "Federal Income Tax purposes," Fortier should have known that what the policies plainly meant was that anything he deducted on his tax returns would be deducted from his gross predisability income, and would, thus, ultimately reduce his disability benefits.

Fourth, I will not consent to the contention that, although the policies use the term "usual and customary" to describe expenses that can be properly deducted from Fortier's gross predisability income, given the plain meaning of the language of subsection (b), Fortier ought to have known that what the policies plainly meant was that the expenses must be "ordinary and necessary." Nor can I concur that, because "usual and customary" means "ordinary and necessary," and because "ordinary and necessary" is a term employed by the Internal Revenue Code in reference to expenses deductible for "Federal Income Tax purposes," Fortier should have known that what the policies plainly meant was that anything he deducted on his tax returns would be deducted from his gross predisability income, and would, thus, ultimately reduce his disability benefits.

Fifth, I disagree that Principal Life's decision to incorporate the Internal Revenue Code into the language of the policies, and in doing so, to deduct Fortier's large start-up and litigation expenses in calculating his disability benefits, is in keeping with the goal of subsection (b) of the policies. The purpose of calculating the predisability earnings is to make an accurate determination of those earnings so that the claimant can be fairly compensated for his disability. Deducting Fortier's large start-up and litigation expenses, however, skews his earnings markedly.

Consequently, I think that Principal Life abused its discretion in failing to interpret the unambiguous language of subsection (b) in its plain, literal, natural, and ordinary sense. Furthermore, its interpretation contravenes the clear purpose of subsection (b).

## II.

The weakest of Principal Life's assertions is that Fortier "wants it both ways" by claiming large business expenses to reduce his federal income tax liability while, at the same time, minimizing his business expenses in an attempt to maximize his disability benefits. It is axiomatic that the goal of subsection (b) of these ERISA policies and the Internal Revenue Code are entirely different. To somehow surmise that the goals of Congress in drafting the Internal Revenue Code and the goals of Principal Life in drafting subsection (b) are in any manner similar strains the bounds of credulity.

As I noted above, the goal of subsection (b) of the policies is to make an accurate determination of the claimant's regular predisability income. But the goal of the Internal Revenue Code is to raise revenue as well as to encourage various policy goals. Hence, it is perfectly proper for Fortier to "want[ ] it both ways" given the differences between the purpose of the disability policies and those of the Internal Revenue Code.

## III.

Finally, in interpreting the fifth factor of subsection (b)—that the expenses deducted from Fortier's predisability earnings must "not exceed the expenses before Disability began"— I cannot agree with Fortier that this provision means that the "[a]verage monthly expenses for the two calendar years before [the] disability began cannot exceed those incurred during the month before the disability began." Instead, I am persuaded by the reasoning of the district court that Fortier's interpretation is inconsistent with the policies'

requirement that Principal Life must calculate Fortier's earnings by reference to the average earnings for the last two calendar years. Consequently, I would hold that Principal Life's interpretation of this provision as a limitation on post-disability expenses is reasonable.

## IV.

In sum, Principal Life's interpretation of subsection (b) does not reflect the plain language of the policies. And, because its interpretation does not reflect the plain language of the policies, it is not reasonable. And, because it is not reasonable, it is an abuse of discretion. Therefore, we ought not put our imprimatur on it. Accordingly, I must respectfully dissent.